Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Recurrido<br><br><br>V.<br><br><br>NEYSA COLÓN PÉREZ<br><br>Peticionaria | TA2025CE00186 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D CD2011-2302<br><br>Sobre:<br>Cobro de Dinero, Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de septiembre de 2025.

El 23 de julio de 2025, compareció ante este Tribunal de Apelaciones, la señora Neysa Colón Pérez (en adelante, señora Colón Pérez o parte peticionaria), mediante *Escrito de Certiorari*. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 27 de junio de 2025 y notificada el 7 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del aludido dictamen, el foro *a quo* dejó sin efecto la ejecución de sentencia de forma provisional y declaró No Ha Lugar la solicitud de mediación presentada por la parte peticionaria.

Por los fundamentos que adelante se exponen, se deniega la expedición del *certiorari*.

### I

Los hechos que propiciaron la controversia de epígrafe se remontan a una *Demanda* sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria presentada el 12 de septiembre de 2011 por Doral Bank. En esencia, Doral Bank arguyó ser tenedora de

buena fe de un Pagaré Hipotecario suscrito entre las partes el 13 de agosto de 2000, ante notario por la suma principal de $211,450.00, más intereses al 5.45% anual y otros créditos accesorios. En aseguramiento del aludido pagaré fue constituida una hipoteca sobre una propiedad ubicada en el barrio Cerro Gordo de Vega Alta, Puerto Rico. Como parte de las alegaciones de la *Demanda* surge que, la parte peticionaria había incumplido con las cláusulas de la hipoteca, al haber dejado de pagar las mensualidades pactadas, pese a múltiples requerimientos, avisos y oportunidades para cumplir. Por lo anterior, Doral Bank sostuvo que, la deuda se encontraba vencida, líquida y exigible. A tales efectos, Doral Bank alegó que, la parte peticionaria adeudaba la suma de $187,909.35 de principal, más los intereses al 5.45% anual desde el día 1ro de agosto de 2009, hasta su completo pago, más las primas de seguro hipotecario y riesgos, recargos por demora y la suma de $21,145.00 para gastos, costas y honorarios de abogados.

Más adelante, el 31 de octubre de 2011 Doral Bank presentó la *Moción Solicitando Anotación de Rebeldía y para que se Dicte Sentencia Conforme a la Regla 45.2(b) de Procedimiento Civil*. Alegó que, la señora Colón Pérez había sido debidamente emplazada y que, había transcurrido en exceso el término concedido por nuestro ordenamiento para que esta contestara la demanda o hiciera alegación responsiva. Es por lo que, solicitó que se le anotara rebeldía a la parte peticionaria. Asimismo, solicitó al foro primario que dictara sentencia en rebeldía a su favor, conforme a la Regla 45.2(b) de Procedimiento Civil.

El 10 de noviembre de 2011, el Tribunal de Primera Instancia emitió *Orden* donde declaró Con Lugar la *Moción Solicitando Anotación de Rebeldía y para que se Dicte Sentencia Conforme a la Regla 45.2(b) de Procedimiento Civil*.

Conforme a dicha *Orden*, el 10 de noviembre de 2011, el foro primario emitió *Sentencia*. Por medio de esta, declaró Ha Lugar la *Demanda*.

Posteriormente, el 10 de noviembre de 20211 la señora Colón Pérez, por derecho propio, presentó la *Moci[ó]n de Pr[ó]rroga para Contestar*. Sostuvo que, no había podido contratar representación legal y solicitó una prórroga de cuarenta y cinco (45) días para presentar la contestación a la demanda y/o contratar representación legal. Mediante *Orden* emitida el 2 de diciembre de 2011, el foro *a quo* dejó sin efecto la *Sentencia* emitida el 10 de noviembre de 2011, y le concedió treinta (30) días a la parte peticionaria para notificar representación legal.

El 19 de enero de 2012, la señora Colón Pérez presentó *Moción* por derecho propio. Por medio de su moción, solicitó la paralización del proceso de ejecución de hipoteca. El foro recurrido emitió *Orden* el 7 de febrero de 2012, donde le apercibió a la parte peticionaria que debía cumplir con la *Orden* emitida el 2 de diciembre de 2011, y/o presentar alegación responsiva en veinte (20) días.

Por otro lado, el 17 de febrero de 2012, Doral Bank presentó *Moción Urgente para Evitar un Fracaso de la Justicia*. Adujo que, había transcurrido en exceso el término de treinta (30) días concedido por el foro *a quo* para que la parte peticionaria anunciara su representación legal y presentara alegación responsiva sin que lo hiciera. Consecuentemente, solicitó al foro de primera instancia que ordenara la continuación de los procedimientos y dictara sentencia conforme a la prueba presentada.

Nuevamente, el 18 de abril de 2012, Doral Bank presentó *Moción Urgente Solicitando se Dicte Sentencia ante Incumplimiento con Órdenes del Tribunal*, en la que reiteró que, pese a lo ordenado por el Tribunal, la parte peticionaria no había presentado alegación

responsiva alguna. Por lo que, solicitó la continuación de los procedimientos y que se dictara sentencia a su favor.

El 1 de mayo de 2012, el Tribunal de Primera Instancia emitió *Sentencia* en la cual declaró Ha Lugar la *Demanda*.

Doral Bank presentó *Moción en Solicitud de Orden para que Secretar[í]a Expida Notificaci[ó]n de Sentencia por Edictos*. Mientras que, el 29 de junio de 2012 el foro recurrido emitió *Orden* donde concedió lo solicitado por Doral Bank.

Transcurridos varios trámites procesales innecesarios pormenorizar, el 7 de junio de 2016, Banco Popular de Puerto Rico (en adelante, BPPR o parte recurrida) presentó *Moción para Asumir Representación Legal, Solicitar Sustitución de Parte Demandante, Restitución de Pagaré y Orden y Mandamiento de Ejecución de Sentencia Enmendados.* En su moción, BPPR sostuvo que, mediante endoso, adquirió el pagaré hipotecario objeto de la controversia de epígrafe. Explicó que, la transferencia del pagaré lo convirtió en la verdadera parte con interés en continuar la reclamación de lo adeudado. Conforme a ello, solicitó al foro de primera instancia que se le permitiese sustituir a Doral Bank como parte demandante en el caso de epígrafe. Mediante *Orden* emitida el 14 de junio de 2016, el foro recurrido declaró Con Lugar el petitorio de BPPR.

Por su parte, el 5 de julio de 2016, la señora Colón Pérez presentó *Moción* por derecho propio. Arguyó que, inició el procedimiento de *loss mitigation*, pero que, no pudo continuar con el mismo, dado a que el BPPR no le había facilitado el pagaré hipotecario. Además, solicitó que se paralizara el proceso de ejecución de hipoteca.

En noviembre de 2017, BPPR presentó *Moción Informativa en Cuanto al paso del Huracán María y de Paralización de los Procesos de Ejecución de Hipotecas*. Por medio de la aludida moción, BPPR notificó su intención de paralizar todos los procedimientos de cobro

de dinero y ejecución de hipotecas residenciales hasta el 31 de diciembre de 2017. Por lo cual, le solicitó al foro recurrido que emitiera una orden paralizando los procedimientos del caso de epígrafe hasta el 31 de diciembre de 2017.  El Tribunal de Primera Instancia emitió *Orden* en la cual concedió lo solicitado por BPPR.

Así las cosas, el 2 de diciembre de 2021, BPPR presentó la *Moción de Continuación de los Procedimientos y en Solicitud de Nueva Orden de Ejecución de Sentencia*. Por medio de esta, le inquirió al foro *a quo* que ordenara la continuación de los procedimientos y expidiera y notificara nueva orden y mandamiento de ejecución de sentencia. El 14 de diciembre de 2021, la primera instancia judicial emitió una *Orden* donde declaró Ha Lugar la petición de la parte recurrida.

El 27 de enero de 2022, la señora Colón Pérez presentó *Moción* por derecho propio. En primer lugar, le solicitó al foro de primera instancia la paralización del proceso de ejecución de hipoteca. Arguyó que, se había comunicado con el BPPR con el fin de reactivar el proceso de *loss mitigation* y que, tenía cita programada el 8 de febrero de 2022.

El 1 de marzo de 2022, la señora Colón Pérez presentó *Moción* por derecho propio donde solicitó la paralización de los procedimientos por no haber sido emplazada adecuadamente.

La primera instancia judicial, mediante *Orden* emitida en igual fecha, dispuso la paralización de la subasta debido a lo aducido por la parte peticionaria. Le concedió a la parte recurrida un término de (20) días para replicar a lo alegado por la parte peticionaria.

Por otro lado, el 3 de marzo de 2022, la parte peticionaria presentó *Moción Urgente Asumiendo Representación Legal y en Solicitud de Relevo de Sentencia*. Solicitó relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, por motivo de que

fue dictada sin jurisdicción sobre la persona. Reitero que, la parte peticionaria no había sido emplazada adecuadamente, puesto que pese a residir en Puerto Rico, nunca recibió el emplazamiento con copia de la demanda. Añadió, además, que, la parte recurrida carecía de legitimación activa en la medida en que no poseía el pagaré al portador que consigna la deuda reclamada.

El 18 de marzo de 2022, BPPR presentó la *Moción en Cumplimiento de Orden*. Expresó que, la solicitud de relevo de sentencia debía ser denegada de plano, por motivo de que la señora Colón Pérez se había sometido a la jurisdicción del tribunal e hizo alegaciones afirmativas en el caso en múltiples ocasiones. Alegó que, la parte peticionaria había presentado varias mociones por derecho propio donde nunca hizo salvedad de que no se sometía a la jurisdicción del tribunal. Por tanto, le solicitó al foro recurrido que determinara que la parte peticionaria se sometió voluntariamente a la jurisdicción del tribunal.

En respuesta, el 23 de marzo de 2022, la parte peticionaria presentó la *Réplica a Moción en Cumplimiento de Orden*. Alegó que, la parte recurrida en su moción no objetó la falta de legitimación activa, por no poseer el pagaré al portador que consigna la deuda reclamada. Por lo que, solicitó al foro primario que declarara Ha Lugar la solicitud de relevo de sentencia.

El 19 de abril de 2022, BPPR presentó *Moción de Paralización*. Solicitó que se paralizaran los procedimientos hasta el 30 de junio de 2022, por motivo de que cualificaría para una posible ayuda de FEMA. Mediante *Resolución* emitida el 20 de abril de 2023, el foro *a quo* ordenó la paralización de los procedimientos.

Transcurridas varias incidencias procesales, innecesarias pormenorizar, la parte peticionaria presentó el 24 de agosto de 2022 la *Moción Asumiendo Representación Legal en Solicitud de Término adicional para Contestar y Solicitud al Amparo de la Ley 268 de 2018*.

Arguyó que, conforme a la Ley Núm. 268 de 2018, la señora Colón Pérez tenía derecho a que el caso fuera referido al proceso de mediación compulsoria.

Así las cosas, 12 de octubre de 2022, la parte peticionaria presentó *Moción en Solicitud de Paralización de los Procedimientos para que el Presente Caso sea Referido a Mediación de Conflictos*. En esencia, volvió a plantear la falta de emplazamiento adecuado, el derecho a que se enviara el caso a mediación compulsoria y la falta de legitimación activa de BPPR. Sin embargo, hizo hincapié en que el caso fuese referido a mediación compulsoria.

En enero de 2023, BPPR presentó la *Moción en Cumplimiento de Orden*.[1] La parte recurrida menciona que dicha moción responde a una *Orden* notificada por el Tribunal de Primera Instancia el 25 de enero de 2023 donde le había concedido diez (10) días para cumplir con una *Orden* emitida el 13 de octubre de 2022[2]. Informó, además, que, se encontraba junto a la parte peticionaria en evaluación activa con el Departamento de Mitigación de Pérdidas. Mencionó que, existía una posibilidad de que la señora Colón Pérez bajo unos fondos del Programa de Asistencia para Dueños de Hogar de Puerto Rico (PRHAP), y que, dichos fondos podrían dirigirse a la deuda existente.

La señora Colón Pérez el 9 de marzo de 2023 presentó *Moción Informativa con Relación a Moci[ó]n Presentada por la Parte Demandante*. Expresó que, el caso no era uno típico de ejecución de hipoteca que se debiera al incumplimiento de la parte peticionaria. Puesto que, había cumplido con su obligación con el acreedor original. Indicó que, cuando se proponía comenzar el proceso de refinanciamiento el 1 de septiembre de 2009, fue cuando se comenzó

---

[1] Cabe destacar que, no se anejó ningún documento al expediente de epígrafe que tuviese lugar en el periodo de 12 de octubre de 2022 hasta enero de 2023.
[2] Hacemos constar que la referida orden no obra en el expediente del caso de marras.

el proceso de transmisión del pagaré a BPPR. Nuevamente hizo mención del argumento de falta de legitimación activa de BPPR. Volvió a solicitar que se refiriera el caso al Centro de Mediación.

El foro de primera instancia mediante *Orden* emitida el 13 de marzo de 2023, le concedió a la parte recurrida un término de treinta (30) días para presentar su posición.

La parte peticionaria el 5 de mayo de 2023, presentó *Moción Informativa con Relación a Última Moci[ó]n Presentada por la Parte Demandante y en Nuevamente Solicitud de Referido del Caso al Centro de Mediación de Conflictos.*

El 22 de junio de 2023, la señora Colón Pérez presentó *Moción en Solicitud de Remedio y Vista*. Por medio de esta, entre otras cosas, le volvió a solicitar al foro primario que refiriera el caso al Centro de Mediación, para que los procesos cumplieran con lo dispuesto en la Ley Núm. 184-2012, por motivo que la propiedad en controversia era su vivienda principal.

El 17 de julio de 2023, el foro recurrido emitió una *Orden* en la cual dispuso lo siguiente:

> NO HA LUGAR A LA SOLICITUD DE RELEVO DE SENTENCIA PRESENTADA POR LA PARTE DEMANDADA Y HA LUGAR LA OPOSICI[Ó]N DE LA PARTE DEMANDANTE.

El 2 de febrero de 2024, la parte peticionaria presentó *Moción en Cumplimiento de Orden y Solicitud de Remedio*. Según la moción, esta responde a una orden emitida por el foro primario para que se expresara la parte peticionaria sobre unas solicitudes presentadas por la parte recurrida.[3] En la aludida moción, la parte peticionaria sostiene que desconocía sobre las solicitudes presentadas por la parte recurrida, pero que, supo de una moción en solicitud de continuación de los procedimientos presentada por BPPR. Según la

---

[3] Hacemos constar que, la *Orden* y las peticiones aludidas en la referida moción presentada por la parte peticionaria no se encuentran en el expediente del caso de epígrafe, por tanto, desconocemos su contenido.

parte peticionaria, el BPPR le había notificado a su representación legal que, la señora Colón Pérez no había completado ciertos requisitos para recibir una ayuda del Programa del Departamento de la Vivienda PRHAP. Alegó que, el caso no había sido sometido al proceso de mediación compulsoria. Asimismo, volvió a señalar la necesidad de que el caso fuese referido al proceso de mediación compulsoria al amparo de la Ley Núm. 184-2012, debido a que, la propiedad a la cual BPPR solicita ejecución de la sentencia es la residencia principal de la señora Colón Pérez. Aseguró haber cumplido con los requerimientos del Departamento de la Vivienda con el propósito de recibir las ayudas del PRHAP. De igual manera, sostuvo que, había sometido y cumplido con los requerimientos del Programa de Mitigación de Pérdidas del BPPR. Nuevamente solicitó que se refiriera el caso al Centro de Mediación de Conflictos.

El Tribunal de Primera Instancia declaro No Ha Lugar la *Moción en Cumplimiento de Orden y Solicitud de Remedio* y añadió:

> El presente caso ya tiene sentencia dictada desde el 1 de mayo de 2012.

> La parte demandada luego solicitó relevo de sentencia y el tribunal dictó No Ha Lugar al mismo el 17 de julio de 2023.

La primera instancia judicial emitió *Orden de Ejecución de Sentencia Enmendado* el 2 de junio de 2025.

Por su parte, el 6 de junio de 2025, la señora Colón Pérez presentó la *Moci[ó]n Reconsideración de Orden al Amparo de la Regla 47 de Procedimiento Civil*. Le solicitó al foro recurrido que reconsiderada la *Orden de Ejecución de Sentencia Enmendado*. Basó su solicitud en que, no procedía que se dictara dicha orden sin haberse celebrado una vista evidenciaria. Añadió que, los procedimientos de mediación no fueron culminados y que, la parte recurrida no actuó de buena fe, al incumplir con la orden del Programa de Asistencia para Dueños de Hogares de Puerto Rico, al

no presentar la deuda existente entre BPPR y la parte peticionaria en relación al préstamo hipotecario. Alegó que, dado a que no fue celebrada una vista se le violentó el debido proceso de ley. Solicitó al foro primario que dejara sin efecto la *Orden* dictada en rebeldía el 2 de junio de 2025 y la anotación de rebeldía, y que le permitiera presentar su alegación responsiva y las defensas que tuviere disponibles.

El 27 de junio de 2025, la primera instancia judicial emitió la *Resolución* cuya revisión nos ocupa. En virtud de esta, determinó lo siguiente:

> Se deja sin efecto la ejecución de sentencia hasta que la parte demandante acredite haber notificado la moción del 22 de mayo de 2025 al Lcdo. Ramos. Referente a la solicitud de mediación, No Ha Lugar.

En desacuerdo, la parte peticionaria acudió ante este foro revisor mediante *Escrito de Certiorari* y esgrimió los siguientes señalamientos de error:

1. Erró el Tribunal a emitir sentencia sin celebrar vista evidenciaria para dilucidar las controversias del caso vulnerando el debido proceso de ley de la parte demandada-peticionaria.

2. Erró el Tribunal de Primera Instancia al no referir el presente caso al Centro de Mediación Compulsoria conforme expresado en la Ley 187 de 2012, según enmendada, conocida como Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal.

Habiendo transcurrido el término reglamentario, sin que compareciera la parte recurrida a exponer su postura, disponemos del recurso sin el beneficio de su comparecencia.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,*

212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[4]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, […], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo,* supra, pág. 372; *Torres González v. Zaragoza Meléndez,* supra, pág. 848.  La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[5]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es

---

[4] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[5] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B. Ley Núm. 184-2012**

Con miras a auscultar alternativas para disminuir los procesos de ejecución de hipotecas y evitar al máximo posible que las personas continúen perdiendo sus propiedades principales de vivienda, el 17 de agosto de 2012, se aprobó la Ley Núm. 184-2012, 32 LPRA secs. 2881-2996, intitulada como la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal". *Franklin*

*Credit v. George Riviello*, 209 DPR 555, 563 (2022). Dicho estatuto establece un proceso de mediación compulsoria, ante los tribunales de Puerto Rico o ante los foros administrativos correspondientes, previo a llevar un proceso de ejecución de hipoteca (*foreclousure*) de cualquier propiedad principal de vivienda en Puerto Rico por cualquier entidad bancaria.[6]

Según la Exposición de Motivos del aludido estatuto, la propiedad principal de vivienda es "aquella que se usa como principal, no (second home), y que para fines de contribuciones sobre bienes inmuebles es la primera residencia o aquella que gozaría de aplicar en cada caso de una exención contributiva". *Franklin Credit v. George Riviello*, supra, pág. 564.

El Artículo 2 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2881, provee la siguiente definición:

> [. . .]
> (b) Mediación Compulsoria: En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación [...] presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. **En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal**. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal. (Énfasis nuestro). *Banco Santander v. Correa García*, 196 DPR 452, 462-463 (2016).

Según se puede observar, el objetivo de la mediación compulsoria es que se logre llegar a un acuerdo que le permita al deudor hipotecario disponer de un acuerdo de pago o alguna otra alternativa que satisfaga a las partes, con el propósito de no perder

---

[6] Véase, Exposición de Motivos de la Ley Núm. 184-2012.

su vivienda principal. *Franklin Credit v. George Riviello*, supra, pág. 564.

El proceso para llevar a cabo la "mediación compulsoria" se encuentra regulado por el Artículo 3 de la Ley para Mediación Compulsoria, 32 LPRA sec. 2882, de la siguiente forma:

> Será deber del tribunal, en los casos que considere necesarios, dentro de los sesenta (60) días después de presentada la alegación responsiva por parte del deudor hipotecario demandado y antes de que se señale la conferencia con antelación al juicio, bajo apercibimiento de desacato, una vista o acto de mediación compulsorio que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. Esto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor o de los deudores sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita. [...]

> De no presentarse el deudor, al procedimiento de mediación o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de mediación, la institución financiera actuará de la forma acordada en el contrato o pagaré efectuado el día de la transacción original de hipoteca. *Banco Santander v. Correa García*, supra, págs. 463-464.

En cuanto a quiénes tendrán derecho a una vista de mediación, el mismo Artículo 3 dispone que:

> **El deudor tendrá derecho únicamente a un procedimiento de mediación** en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal, **siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal**. (Énfasis suplido). *Id.*, pág. 464.

Nuestro Máximo Foro ha dispuesto que, bajo la Ley Núm. 184-2012, *supra*, la mediación compulsoria es un *requisito jurisdiccional*, por tanto, de incumplir con dicho requisito, no podrá dictarse

sentencia ni ordenarse la venta judicial de un inmueble que se utilice como residencia principal. *Franklin Credit v. George Riviello*, supra, pág. 565. Es por lo que, el tribunal tendrá la obligación de referir el caso a mediación compulsoria en "todos los casos en los que se solicite la ejecución de un inmueble que se utiliza como residencia principal, salvo en aquellos casos en los que el deudor de encuentre en rebeldía o cuando el tribunal haya eliminado sus alegaciones". *Franklin Credit v. George Riviello*, supra. pág. 565, citando a *Banco Santander v. Correa García*, supra. Sin embargo, sobre lo anterior, el Tribunal Supremo ha señalado que, nada impide que los deudores que estén en rebeldía o a quienes el tribunal les haya eliminado sus alegaciones asistan al proceso de mediación, de así pactarlo. *Íd.*

La Máxima Curia, destaca que todas las enmiendas que se le han realizado a esta ley, han sido dirigidas a velar por que *se cumpla la política pública de que las familias no se queden sin hogar. Íd.* pág. 566. Es decir, se han llevado a cabo múltiples esfuerzos conducentes a que se proteja la residencia o vivienda principal. *Íd.*

Consecuentemente, todo lo antes dispuesto indica que la protección de la Ley Núm. 184-2012, *supra*, opera con el fin de salvaguardar la residencia o vivienda principal. *Íd.*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En su primer señalamiento de error, la parte peticionaria sostiene que, el foro *a quo* incidió al emitir sentencia sin celebrar vista evidenciaria con el propósito de dilucidar las controversias del mismo. Añadió que, dicha acción vulneró su debido proceso de ley.

Respecto al error antes señalado, cabe destacar que el foro primario emitió *Sentencia* el 1ro de mayo de 2012, por lo cual, la misma es final y firme. Siendo así, dicho planteamiento en esta

etapa de los procedimientos resulta tardío. Consecuentemente, este Tribunal carece de jurisdicción para atender el mismo.

Como segundo señalamiento de error, la parte peticionaria aduce que el foro recurrido erró al no referir el caso al Centro de Mediación Compulsoria conforme a la Ley Núm. 184-2012, *supra.*

Cabe señalar que, si bien es cierto que Ley Núm. 184, *supra* dispone un procedimiento de mediación compulsoria, la propia ley limita a que dicho procedimiento se lleve a cabo siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía.[7] En el caso de epígrafe, la parte peticionaria se encontraba en rebeldía ya que, nunca contestó la *Demanda* y por ello, el Tribunal de Primera Instancia emitió sentencia en rebeldía.

Evaluado el recurso presentado por la parte peticionaria, colegimos que, en ausencia de los criterios expuestos en la Regla 40 del Reglamento de este Tribunal, *supra,* no intervendremos con el mismo. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, se deniega la expedición del *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Art. 3 de la Ley Núm. 184-2012